# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| TRACY WRIGHT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 14-2913-STA-dkv |
| | ) |
| MEMPHIS POLICE ASSOCIATION, INC.; MICHAEL WILLIAMS, individually and in his official capacity; and ESSICA CAGE-LITTLEJOHN, individually and in her capacity as supervisor; | ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants Memphis Police Association, Inc.; Michael Williams, and Essica Cage-Littlejohn's Motion to Dismiss (ECF No. 16) filed on January 23, 2015. On February 13, 2015, Plaintiff Tracy Wright filed a response in opposition to Defendants' Motion, and Defendants have filed a reply brief. For the reasons set forth below, Defendants' Motion is **GRANTED IN PART, DENIED IN PART**.

### BACKGROUND

On January 9, 2015, Plaintiff filed an Amended Complaint raising claims against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Tennessee state law. According to the Amended Complaint, Plaintiff, a white female, is a former employee of Defendant Memphis Police Association (hereinafter "MPA"). Plaintiff began her employment with MPA in 1989 as a part-time employee. (Am. Compl. ¶ 12.) On January 1, 2001, Plaintiff

1

became a full-time secretary/administrative assistant at MPA. (*Id.* ¶ 13.) In February 2004, Ladoris Harris, a black female, was assigned to work at MPA through a temporary agency to assist with clerical tasks. (*Id.* ¶ 14.) In December 2007, Harris became a full-time employee of MPA working as a receptionist. (*Id.* ¶ 15.)

On June 11, 2009, the MPA Board of Directors established compensation rates and benefits for MPA office staff. (*Id.* ¶ 16.) At that time the MPA office staff consisted of Plaintiff as secretary/administrative assistant (or sometimes referred to as office manager) and a receptionist, Ms. Harris. (*Id.*) On October 28, 2009, the compensation rates and benefits were incorporated into a written standard operating procedure. (*Id.* ¶ 17.) The hourly compensation rate for the secretary/administrative assistant, Plaintiff, was based upon her hire date as a full-time employee. (*Id.* ¶ 18.)

In April or May of 2011, Defendant Michael Williams ("Williams"), a black male, became president of the MPA. (*Id.* ¶ 19.) In the spring of 2011, the Memphis Police Department assigned Defendant Essica Cage-Littlejohn ("Cage-Littlejohn"), a black female, to work at MPA. (*Id.* ¶ 20.) Later in 2011, Cage-Littlejohn was elected vice-president of MPA and assumed responsibility for supervising MPA staff, including Plaintiff. (*Id.* ¶ 21.) On March 1, 2012, Cage-Littlejohn recommended Ms. Harris for promotion to administrative assistant/secretary, and Harris received the promotion. (*Id.* ¶ 22.) On Cage-Littlejohn's recommendation, the MPA Board also approved two raises for Harris in the span of a year. (*Id.*) After Harris's second raise, Harris and Plaintiff were being paid at the same rate, though Harris's pay exceeded the pay scale previously adopted by the MPA Board of Directors. (*Id.*)

In February 2013, Plaintiff learned that she was not receiving the pay she was due under the compensation structure approved by the MPA Board of Directors and incorporated into

MPA's written standard operating procedure. (*Id.* ¶ 23.) On May 16, 2013, Plaintiff asked Cage-Littlejohn for a raise to bring her compensation in line with the compensation structure set out in the MPA standard operating procedure. (*Id.* ¶ 24.) Cage-Littlejohn denied Plaintiff's request. (*Id.* ¶ 25.) On June 27, 2013, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging disparate treatment. (*Id.* ¶ 8a.)

According to the Amended Complaint, Cage-Littlejohn treated Plaintiff less favorably than Harris, harassed Plaintiff, and was hostile to Plaintiff. (*Id.* ¶ 26.) And after Plaintiff filed her charge with the EEOC, Cage-Littlejohn's harassment and hostility only grew worse. (*Id.* ¶ 27.) Plaintiff alleges that Cage-Littlejohn took the following adverse actions against Plaintiff on account of her race: (a) denying her request for a raise; (b) forcing her to petition the Board for a raise; (c) altering her work schedule; (d) refusing to allow her to use sick leave when she missed work for a medical condition; (e) scrutinizing Plaintiff's time more than other employees; (f) shifting work responsibilities to Plaintiff because another employee did not want to perform the tasks; (g) making false allegations about Plaintiff's honesty and truthfulness; (h) suspending Plaintiff for two months without cause; and (i) terminating Plaintiff's employment. (*Id.* ¶ 30.) On more than one occasion, Plaintiff brought her concerns to Williams, the president of MPA, but Williams failed to intervene or take any corrective action. (*Id.* ¶ 28.)

Based on these fact pleadings, the Amended Complaint alleges that the MPA discriminated against Plaintiff on the basis of her race in violation of Title VII and section 1981. Plaintiff alleges that the disparate treatment she suffered took a number of forms. Specifically, Cage-Littlejohn and the MPA (a) based Plaintiff's pay on the date she began full-time employment with MPA but not Harris's; (b) paid Plaintiff less than she was due under the official MPA pay scale but Harris more than she was entitled to; and (c) refused to permit

Plaintiff to take two weeks sick leave for a medical condition but allowed Harris to take two weeks after the death of her husband. (*Id.* ¶ 33.) The Amended Complaint further alleges that all Defendants retaliated against Plaintiff for filing a charge with the EEOC. Defendants Williams and Cage-Littlejohn presented false information to the MPA Board of Directors and thereby caused the Board to terminate Plaintiff's employment with MPA. Plaintiff also claims breach of contract, promissory estoppel, intentional interference with a contractual relationship, and statutory breach of contract under Tenn. Code Ann. § 47-50-109, all under Tennessee law.

In their Motion to Dismiss, Defendants argue that the Amended Complaint fails to state any claim on which relief may be granted under federal law. First, Defendants contend that the MPA does not meet Title VII's definition as an "employer" because it does not have 15 employees. According to Defendants, the MPA had only two employees at all times relevant to Plaintiff's claims. The Directors and Officers of the MPA, a labor organization, do not constitute employees of the MPA. As a result, Plaintiff has failed to state her Title VII claims for disparate treatment and retaliation. Second, Defendants argue that even if Plaintiff has properly alleged that the MPA meets Title VII's definition of an "employer," Plaintiff has not stated a cognizable claim against Williams or Cage-Littlejohn in their individual capacities. Title VII does not create a cause of action for employment discrimination against a supervisor. Furthermore, Plaintiff did not name Williams or Cage-Littlejohn as respondents in her EEOC charge. Third, the Amended Complaint does not state a claim for reverse discrimination in violation of 42 U.S.C. § 1981. Plaintiff has not alleged any direct evidence of reverse discrimination and has not alleged any facts to show that the MPA is "the unusual employer who discriminates against the majority." Finally, Defendants argue that once the Court dismisses all of Plaintiff's federal

4

claims for failure to state a claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

In her response in opposition, Plaintiff argues that she has stated plausible federal claims for relief. Relying on the Supreme Court's decision in *Walters v. Metropolitan Educational Enterprises, Inc.*, Plaintiff maintains that the MPA is an "employer" for purposes of Title VII. The correct test from *Walters* is whether the MPA "has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question." The MPA pays all Directors and Officers "wages," which is enough to constitute an employment relationship. According to Plaintiff, MPA Directors also perform traditional employee functions, serving as representatives for Memphis police officers at disciplinary hearings and as managers over MPA's office staff. MPA Directors and Officers also receive a W-2 wage statement from the MPA. For additional support Plaintiff cites the MPA's wage report filed with the Tennessee Department of Labor and Workforce Development, which Plaintiff has attached as an exhibit to her brief.

As for Plaintiff's claims against Williams and Cage-Littlejohn, Plaintiff concedes that she has no plausible claim under Title VII against her supervisors in their individual capacities. Plaintiff does, however, argue that she has stated a plausible claim under 42 U.S.C. § 1981 against Williams and Cage-Littlejohn. As for the merits of her pleadings, Plaintiff asserts that she has alleged a plausible reverse discrimination claim against Defendants. The fact that Williams and Cage-Littlejohn are African-American and treated Plaintiff less favorably than they did another African-American employee of the MPA states the reverse discrimination claim. Plaintiff concludes by arguing that her federal claims and pendent state law claims arise out of a

common nucleus of facts, and so the Court has supplemental jurisdiction over the state law claims. For these reasons, Plaintiff asks the Court to deny Defendants' Rule 12(b)(6) Motion.

In their reply, Defendants again argue that the MPA is not an "employer" as Title VII defines the term. Defendants cite a number of decisions from other circuits holding that board members of a labor organization are not "employees" of the union. Defendants have attached an affidavit from Shannon Bowen, the Sergeant-at-Arms for the MPA and a member of the MPA Executive Board. According to the Bowen affidavit, three MPA executive officers (the president, the vice-president, and the secretary/treasurer) work full-time for the MPA but are actually considered full-time employees of the Memphis Police Department. These executive officers receive their full salary from the police department and only a stipend from the MPA. The MPA Executive Board is composed of 15 members who are full-time employees of the City of Memphis and not the MPA. Each of the 15 members of the Executive Board attends a monthly board meeting and receives only a stipend from the MPA. Based on this proof, Defendants argue that Plaintiff cannot show the MPA has 15 employees. Therefore, the Court should dismiss Plaintiff's Title VII.

As for Plaintiff's section 1981 claims, Defendants argue that in order to show that the MPA is the "unusual employer who discriminates against the majority," Plaintiff must allege that the MPA has a history of unlawfully considering race in its hiring decisions. The Amended Complaint makes no such claim. Moreover, Plaintiff has not alleged that Williams or Cage-Littlejohn is the unusual supervisor who discriminates against a majority-race employee or that Williams or Cage-Littlejohn intentionally discriminated against Plaintiff on the basis of her race, showings Plaintiff must make to hold her supervisors individually liable under section 1981. As such, the Court should hold that the Amended Complaint fails to state a section 1981 claim

6

against any Defendant. Defendants restate their argument that the Court should decline to exercise supplemental jurisdiction over the state law claims because Plaintiff has failed to state any claim for relief under federal law.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party.[1] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[2] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[3] Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[5] In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative

---

[1] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[2] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[3] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[4] Fed. R. Civ. P. 8(a)(2).

[5] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

level" and to "state a claim to relief that is plausible on its face."⁶ "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."⁷

## ANALYSIS

### I. Title VII's Employee-Numerosity Requirement

The first issue presented is whether Plaintiff has plausibly alleged facts to show that the MPA satisfies Title VII's so-called employee-numerosity requirement and thus qualifies as an "employer," as Title VII defines the term. Title 42 U.S.C. § 2000e(b) defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."⁸ The Supreme Court has referred to this definition as an "employee-numerosity requirement" and held that for purposes of satisfying the requirement, "all of the individuals with whom an employer has an employment relationship are 'employees' of that employer."⁹ What is more, the Supreme Court has held that the employee-numerosity requirement is "an essential element of a claim" under Title VII, and not a jurisdictional issue.¹⁰ Consequently, the

---

⁶ *Twombly*, 550 U.S. at 555, 570.

⁷ *Iqbal,* 556 U.S. at 678.

⁸ 42 U.S.C. § 2000e(b).

⁹ *Walters v. Metro. Educ. Enters, Inc.*, 519 U.S. 202, 206 (1997) (adopting the "payroll method" for testing whether an employer satisfies Title VII's employee-numerosity requirement).

¹⁰ *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

8

employee-numerosity requirement is a question of fact, and, where the facts are contested, a jury question.[11]

In light of these principles, the Court holds that the Amended Complaint plausibly alleges that the MPA satisfies the employee-numerosity requirement and meets Title VII's definition of an "employer." According to the Amended Complaint, the MPA is "an employer" as Title VII defines the term because the MPA at all relevant times "maintained at least fifteen (15) individuals on its payroll," including "staff employees, board members, and officers."[12] These well-pleaded allegations are fact pleadings the Court accepts as true for purposes of Defendants' Rule 12(b)(6) Motion. Therefore, the Amended Complaint plausibly alleges that the MPA is an "employer" as Title VII defines the term.

Defendants argue that under case law from other circuits, board members of a union or labor organization cannot constitute "employees" of the union for purposes of Title VII. Defendants rely principally on the Seventh Circuit's decision in *Chavero v. Local 241, Division of the Amalgamated Transit Union*. The question presented in *Chavero* was whether a director was a union "employee" for purposes of Title VII's employee-numerosity requirement. The Seventh Circuit held that "the primary consideration is whether an employer-employee relationship exists" and concluded that the undisputed evidence in the case showed that the directors of the union performed no employee duties and the board "report[ed] to no one other than itself."[13] The Seventh Circuit reached its conclusion about the relationship between the

---

[11] *Id.* ("If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts.").

[12] Am. Compl. ¶¶ 2, 11.

[13] *Chavero v. Local 241, Div. of the Amalgamated Transit Union*, 787 F.2d 1154, 1157 (7th Cir. 1986).

9

union and its directors at summary judgment upon consideration of a fully developed factual record. By contrast, Defendants here seek dismissal of Plaintiff's Title VII claims at the pleadings stage and upon consideration of evidence, namely, the Bowen affidavit, not found in the pleadings. The Court declines to evaluate that evidence to decide whether Plaintiff's Amended Complaint states a claim upon which relief may be granted under Title VII. Thus, the Court finds *Chavero* unpersuasive.

And on its merits, *Chavero* highlights that the issue of whether an employment relationship exists between a union and its directors or officers is at bottom a fact-bound inquiry. While the Seventh Circuit found no such relationship on the facts presented in *Chavero*, the Sixth Circuit found that a non-profit charity in *E.E.O.C. v. First Catholic Slovak Ladies Association* did meet the Age Discrimination in Employment Act ("ADEA")'s numerosity requirement where the charity's directors and officers actually performed traditional employee functions and constituted "employees" of the charity. Notably, the Sixth Circuit faulted the district court in that case for "emphasizing that these women held elected positions as directors and officers" while "fail[ing] to assess accurately their true status."[14] The Court finds that it is poorly situated at the pleadings stage to make an accurate assessment of the employment status of the MPA's directors and officers with nothing more than the allegations of the Amended Complaint, the MPA's wage report to the state of Tennessee, and an affidavit from one of the MPA's current officers and board members. Therefore, Defendants' Motion to Dismiss is **DENIED** as to this issue but without prejudice to raise the issue in a subsequent dispositive motion.

---

[14] *E.E.O.C. v. First Catholic Slovak Ladies Ass'n*, 694 F.2d 1068, 1070 (6th Cir. 1982).

**II. Reverse Discrimination under Title VII and Section 1981**

Next, Defendants argue that the Amended Complaint fails to state a claim for reverse discrimination under Title VII or Section 1981. Specifically, Defendants contend that Plaintiff has not alleged all of the elements of a prima facie case of reverse discrimination under the *McDonnell Douglas* burden-shifting framework. Title VII exists so that the workplace will "be an environment free of discrimination, where race is not a barrier to opportunity."[15] Section 1981 provides "a federal remedy against discrimination in private employment on the basis of race."[16] Whether a plaintiff seeks relief for employment discrimination under Title VII or section 1981, the Sixth Circuit analyzes both claims under the same standards.[17] To make out a prima facie case of reverse discrimination, a plaintiff must prove the following elements: (1) background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority; (2) the plaintiff was qualified for the job; (3) the plaintiff suffered an adverse employment action; and (4) the plaintiff was treated differently than similarly situated, non-protected employees.[18]

The Court holds that Plaintiff has alleged a plausible claim for reverse discrimination. In this case, Defendants argue that the Amended Complaint fails to allege any facts that would support the first element of Plaintiff's prima facie case of reverse discrimination, that is, background circumstances to support the suspicion that the MPA is the unusual employer who

---

[15] *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009).

[16] *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 459-460 (1975).

[17] *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009) ("[W]e review § 1981 claims under the same standard as Title VII claims.").

[18] *Leavey v. City of Detroit*, 467 F. App'x 420, 424 (6th Cir. 2012).

discriminates against the majority. It is well-settled that a complaint claiming unlawful employment discrimination need not allege all of the prima facie elements of the claim in order to survive a Rule 12(b)(6) motion to dismiss.[19] "In *Swierkiewicz v. Sorema,* the Supreme Court unanimously held that the prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement."[20] In the case at bar, the Amended Complaint alleges relevant facts and dates from Plaintiff's employment history with the MPA, identifies a similarly situated comparator employee who was treated more favorably than Plaintiff, provides the names and race of the supervisors who allegedly discriminated against Plaintiff, and lists all of the allegedly discriminatory, adverse actions taken against Plaintiff. The Court finds that Plaintiff's "factual allegations are at least as detailed, if not more so, than those the Supreme Court found 'easily satisfie[d] the requirements of Rule 8(a)' in *Swierkiewicz.*"[21] Therefore, the Amended Complaint has stated a plausible claim for reverse discrimination, with or without alleging all of the elements of the prima facie case for such a claim.

Moreover, the Court holds that the Amended Complaint does, in fact, allege background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority. The Sixth Circuit has repeatedly held that "the mere fact that a racial minority took an adverse action against a [non-minority plaintiff] is sufficient to satisfy the background circumstances requirement."[22] The Amended Complaint alleges that Cage-Littlejohn treated Ms. Harris more favorably than Plaintiff and that both Cage-Littlejohn and Ms.

---

[19] *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012).

[20] *Id.* (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002)).

[21] *Id.* at 610.

[22] *Leavey,* 467 F. App'x at 425; *see also Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002); *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008); *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 339-40 (6th Cir. 2009).

Harris are African-American and Plaintiff is white. The Amended Complaint further alleges that both Williams and Cage-Littlejohn retaliated against Plaintiff and that Williams and Cage-Littlejohn are African-American. So even if Plaintiff was required to allege a prima facie case of reverse discrimination, these allegations would satisfy her burden to allege background circumstance to show that the MPA is the unusual employer who discriminates against the majority. Therefore, the Motion to Dismiss is **DENIED** as to this issue.

**III. Claims against Williams and Cage-Littlejohn in Their Individual Capacities**

Plaintiff also alleges claims against Williams and Cage-Littlejohn in their individual capacities under Title VII and 42 U.S.C. § 1981. In their Motion to Dismiss, Defendants argue that Plaintiff has no cause of action under Title VII against Williams or Cage-Littlejohn in their individual capacities, and Plaintiff has conceded the issue in her response brief. As such, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's Title VII claims against Williams and Cage-Littlejohn.

With respect to the section 1981 claims, the Sixth Circuit has concluded that "individuals may be held liable for violations of § 1981."[23] In order to hold an individual personally liable under section 1981, a plaintiff must show that the individual was personally involved in some adverse action against the plaintiff.[24] Having already held that the Amended Complaint states a plausible claim for reverse discrimination, the Court holds that the Amended Complaint has

---

[23] *Jones v. Cont'l Corp.,* 789 F.2d 1225, 1231 (6th Cir. 1986).

[24] *Wagner v. Merit Distrib.*, 445 F. Supp. 2d 899, 909 (W.D. Tenn. 2006) (Breen, J.); 4A C.J.S. Civil Rights § 425 ("Personal liability under Section 1981 must be predicated on the actor's personal involvement.").

stated section 1981 claims against both Williams and Cage-Littlejohn. Plaintiff plausibly alleges that Williams and Cage-Littlejohn were personally involved in her termination at the MPA. The Amended Complaint alleges that Cage-Littlejohn discriminated against Plaintiff because of her race and details several discrete acts taken by Cage-Littlejohn against Plaintiff. As for Williams, Plaintiff alleges that he was aware of Cage-Littlejohn's discrimination and failed to act. Finally, the Amended Complaint alleges that both Williams and Cage-Littlejohn retaliated against Plaintiff by presenting false information to the MPA board, on which the board relied to terminate Plaintiff's employment. These allegations state a plausible claim under 1981 against Williams and Cage-Littlejohn.

Defendants advance two arguments for dismissal, neither of which the Court finds convincing. According to Defendants, the Amended Complaint fails to allege (1) that Williams or Cage-Littlejohn is the unusual supervisor who discriminates against the majority and (2) that either supervisor engaged in intentional discrimination. The Court has already considered and rejected Defendants' first contention that the Amended Complaint fails to allege background facts to support Plaintiff's reverse discrimination claim. Plaintiff's allegation that both Williams and Cage-Littlejohn are African-American and took adverse action against Plaintiff suffices "to satisfy the background circumstances requirement."[25] Defendants have raised their second contention that the Amended Complaint fails to allege intentional discrimination for the first time in their reply brief. Courts generally will not consider an issue briefed for the first time in a reply because it denies the non-moving party an opportunity to respond to the issue.[26] As such,

---

[25] *Leavey*, 467 F. App'x at 425.

[26] *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 684 (6th Cir. 2011); *Coleman v. Ann Arbor Transp. Auth.*, 947 F. Supp. 2d 777, 788 (E.D. Mich. 2013); *Ross v. Choice Hotels Int'l, Inc.*, 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012); *S & M Brands, Inc. v.*

the Court declines to reach the issue of whether the Amended Complaint plausibly alleges intentional discrimination. Therefore, the Motion to Dismiss is **DENIED** as to the section 1981 claims against Williams and Cage-Littlejohn in their individual capacities.

## IV. State Law Claims

The final issue presented in Defendants' Motion to Dismiss is whether the Court should exercise supplemental jurisdiction over Plaintiff's claims under Tennessee law. The Amended Complaint alleges causes of action for breach of contract, promissory estoppel, and intentional interference with a contractual relationship, all under Tennessee law. Title 28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[27] Section 1367(c) goes on to grant a district court the discretion to decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction."[28] According to Defendants, the Court should decline to exercise supplemental jurisdiction over the claims under section 1367(c) if the Court dismisses Plaintiff's Title VII and section 1981 claims. Because the Court is not dismissing Plaintiff's Title VII and section 1981 claims, Defendants' Motion to Dismiss Plaintiff's state claims pursuant to 28 U.S.C. § 1367(c) is **DENIED**.

---

*Summers*, 393 F. Supp. 2d 604, 611 (M.D. Tenn. 2005) *aff'd sub nom. S&M Brands, Inc. v. Summers*, 228 F. App'x 560 (6th Cir. 2007).

[27] 28 U.S.C. § 1367(a).

[28] § 1367(c).

## CONCLUSION

The Court holds that the Amended Complaint plausibly alleges that the MPA has 15 employees and thus satisfies Title VII's employee-numerosity requirement. The Amended Complaint also plausibly alleges a claim for reverse discrimination against the MPA under Title VII and 42 U.S.C. § 1981. While Plaintiff has no cause of action under Title VII against Williams and Cage-Littlejohn in their individual capacities, Plaintiff has plausibly alleged a section 1981 claim against both Williams and Cage-Littlejohn. Having concluded that Plaintiff has stated claims for relief under federal law, the Court finds no reason to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). Therefore, Defendants' Motion to Dismiss is **GRANTED in part, DENIED in part**.

  **IT IS SO ORDERED.**

           **s/ S. Thomas Anderson**
            S. THOMAS ANDERSON
            UNITED STATES DISTRICT JUDGE

            Date: May 26, 2015.